BOLAND *v.* WHITMAN, Receiver of the Sinnissippi Insurance Company.

MUTUAL FIRE INSURANCE COMPANY.—*Receiver.*—*Pleading.*—In a suit by a receiver of a mutual fire insurance company, organized under the laws of this State, to recover an assessment on a premium note executed to said company by the defendant, it is not necessary that the complaint should be accompanied by a transcript of the decree appointing the plaintiff receiver of the company and making the assessment sued for.

SAME.—*Rescission of Contract of Insurance.*—By agreement between a mutual fire insurance company, acting through its board of directors or an agent duly authorized by them, and the insured, a contract of insurance may be rescinded by the surrender of the policy before the expiration of the time for which it was issued and the release of the insured from further obligation on his premium note.

SAME.—*Suit on Premium Note.*—*Ignorance of Law.*—The fact that assessments upon a premium note executed to a mutual fire insurance company have been made more frequently and in greater amounts than the agent of the company, at the time of the execution of the note, represented they would be

to the insured, who confided in such representations and was induced thereby to enter into the contract and execute the note, cannot constitute a defense to a suit on such note.

SAME.—*Fraudulent Representations as to Solvency.*—If at the time of the making of the contract of insurance, the agent, by the authority of the directors, represents that the company is entirely solvent and able to pay all losses and is then worth a certain considerable amount, and the insured relies on such representations and is induced thereby to enter into said contract and execute the premium note, and said representations are false, these facts will constitute a good defense to a suit on said premium note.

SAME.—*Pleading.—Fraud.*—Suit by the receiver of a mutual fire insurance company on a premium note. Answer, that the officers of said company entered into a fraudulent combination with A. and B. and procured the institution by A. and B. of the suit against said company, in which said receiver was appointed and the assessment sued for in this action was made, and by fraud, collusion, improper admissions, and false testimony, procured the decree, assessment, and appointment of the plaintiff in this action as receiver.

*Held,* that if the defendant could in this collateral manner impeach said decree for fraud, still the answer was bad for failing to allege any material facts constituting fraud.

SAME.—*Change of Ownership of Insured Property.*—Where property insured by a mutual fire insurance company is sold and conveyed by the insured, he is not liable to be assessed on his premium note for losses occurring after such sale and conveyance.

APPEAL from the Lawrence.Common Pleas.

This was a suit by Whitman,.Receiver of the Sinnissippi Insurance Company, against Boland,.on.two·premium notes,. executed by him to said insurance company. The complaint is in two paragraphs. The first is, on a. premium note executed on the 30th of September, 1864, as follows:

"For value received in policy No. 1623, dated the 30th of September, 1864, issued by the Sinnissippi Insurance Company, I promise to pay the said company the sum of two hundred and forty dollars, in such portions, and at such time or times as the directors of said company may, agreeably to their by-laws and the laws of this State, require to pay the expenses and losses, as prescribed by the laws of this State, without any relief from valuation or appraisement laws."

VOL. XXXIII.—5

The second paragraph is on a note for one hundred and twenty dollars, executed on the 22d day of March, 1865, in consideration of policy No. 3202, and is in all other respects similar to that above set forth. It is averred in the complaint, that on the 8th day of July, 1867, an action was instituted in the circuit court of Marion county, in this State, against the said Sinnissippi Insurance Company, and that such proceedings were had thereon that afterwards, on the 23d day of November, 1867, by the judgment and decree of said court, the franchises of said company were declared forfeited, and the said Whitman was appointed receiver of said company, and was thereby authorized and directed to take possession of all the property, notes, and assets, of said company. And it was further ordered and decreed, that, for the purpose of paying the liabilities of said company for losses by fire, there should be levied and assessed upon the premium notes held by said company, a sum equal to the then unpaid assessments theretofore made by said company on said premium notes, with twenty per cent. on the face of said notes in addition thereto, which the plaintiff, as such receiver, was authorized and directed to collect and receive. It is also averred in the complaint, that the unpaid assessments made by said company, prior to the 27th of July, 1867, on the premium note of the defendant referred to in the first paragraph, amount to the sum of sixty-two dollars and forty cents, and the further assessment of twenty per cent. thereon, directed by the decree of the court, amounts to forty-eight dollars, making in all one hundred and ten dollars and forty cents; and that the unpaid assessments made by the company, prior to the 27th of July, 1867, on the note of the defendant referred to in the second paragraph, amount to the sum of nineteen dollars and twenty cents; and the further assessment of twenty per cent. thereon, under the decree of the court, amounts to the sum of twenty-four dollars, making an aggregate of forty-three dollars and twenty cents.

A demurrer was filed to the complaint, which was over-ruled, to which the defendant excepted.

An answer was then filed, consisting of six paragraphs. The court sustained a demurrer to the second, third, fourth, and sixth paragraphs, to which the defendant excepted. He then withdrew the first and fifth paragraphs, and final judgment was rendered on the demurrers to the others.

The second paragraph alleges, that, before the appoint-ment of the plaintiff as receiver of said company, by an agreement between the defendant and one George W. Whit-comb, the agent of said company, and by the authority of the company, the said contracts of insurance were rescinded, and the defendant surrendered and returned to the company his policies of insurance for which the notes sued on were given; that the defendant, having paid to said company all assess-ments made on said notes prior to the date of said contract of rescission, agreed that the company should retain the amount so paid; and in consideration thereof and of the sur-render of said policies, it was agreed that said company should return and surrender up to the defendant said pre-mium notes.

The third paragraph alleges, that at the time of the exe-cution of said premium notes, said company by its agent falsely represented to the defendant that the company was worth two million dollars, and was solvent and able to pay all losses; that no assessment would be made on said notes under twelve months from the date of their execution; that subsequent assessments would not be made oftener than once a year; that no assessment would ever exceed ten per cent. of the amount of said notes; and that the financial con-dition of the company was so flourishing and prosperous that it was more than probable that no assessment would be made against the defendant during the five years his pol-icy had to run; that the defendant relying on said repre-sentations was induced thereby to enter into said contracts and execute said notes; that said company was then, in fact, insolvent and unable to pay losses, and was not worth

any considerable sum; that said representations were false and fraudulent; that an assessment was made on said notes in less than twelve months from their date, and subsequent assessments were made thereon oftener than once in twelve months, and for more than ten per cent. of the amount of said notes.

The fourth paragraph alleges, that the officers of the insurance company entered into a fraudulent combination with Ross and Cluggish, and thereby procured the institution of the suit against said company by Ross and Cluggish in the Marion Circuit Court, and by fraud, collusion, improper admissions, and false testimony, procured the decree, assessment, and appointment of the plaintiff as receiver, as stated in the complaint.

The sixth paragraph alleges, that in December, 1865, and after paying all assessments made prior thereto, he sold and conveyed the property insured in said policies to one Moore; and that, by agreement with the company, he surrendered to them his said policies of insurance, and said contracts were rescinded, the company being released from all liability and retaining the amounts paid on said insurance.

ELLIOTT, J.—The ruling of the court upon the demurrer to the complaint raises the first question presented in the case.

The only objection urged to the complaint is, that it is not accompanied by a transcript of the decree of the Marion Circuit Court in the case of Ross and Cluggish against the insurance company, by which the plaintiff was appointed receiver of the company and the assessment made on the premium notes. The objection cannot be sustained.

The suit is founded on the premium notes, and not on the decree of the Marion Circuit Court, within the purview of the seventy-eighth section of the code. The plaintiff's right to sue on the notes and the fact that a legal assessment had been made rest in averment, but the statute does not require that the evidence or a copy of it, by which the

facts are to be proved, should be filed with the complaint, as it is not the foundation of the action, though essential to a recovery.

Errors are also assigned on the ruling of the court in sustaining demurrers to the second, third, fourth, and sixth paragraphs of the appellant's answer.

The second paragraph sets up a rescission of the contracts of insurance and a surrender of the policies for which the notes sued on were given, before the proceedings were commenced in the Marion Circuit Court, under which the plaintiff was appointed receiver of said company. It is contended on behalf of the appellee that this paragraph is bad, for the reason that neither the directors of the company nor any agent thereof, acting by their authority, possessed the power to rescind said contracts of insurance or release the appellant from the obligation of said notes, during the period the policies were to run.

In support of this position, it is argued that, the insurance company being a mutual one, organized under the laws of this State, the appellant, by virtue of his policies and the execution of the premium notes, became a member of said company, and that all the other policy holders in said company were parties in interest in the premium notes executed by the appellant, and that the appellant could not, therefore, be permitted to withdraw from the company, or be released from the obligations created by said notes, without the consent of all the other policy holders. It is true, that the appellant by virtue of his policies became a member of the company, and so continued as long as he remained insured, and was liable to assessments on his premium notes for losses to the company by fire, occurring whilst he was so insured. But the management and control of the affairs and business of such companies are committed to and invested in a board of directors, elected by the corporators, and the directors elect a president, vice president, and treasurer, and may also appoint agents of the company for the transaction of such business as may be properly transacted

by them. The directors represent the corporation and the corporators, and the latter are bound by the acts of the directors in all matters properly pertaining to the business of the company. A policy of insurance and the premium notes given therefor constitute a contract between the company and the insured, and no reason is perceived why such a contract may not be rescinded by the mutual agreement of the insured and the corporation, the latter acting through its board of directors or an agent duly authorized by them; such a power on the part of the board of directors, it seems to us, is essentially necessary to the safe and proper transaction of the business of the company.

We think the paragraph was good, and the demurrer to it should not have been sustained.

The third paragraph presents a more doubtful question. The alleged representations as to the times and amounts of the assessments that might be made on the premium notes, amount to nothing as a defense. Under the statute, assessments on the premium notes could only be made to pay losses by fire, and as the appellant is presumed to know the law, he must be presumed to know the dates of such assessments, and the amounts thereof depended entirely on the dates and amounts of such losses, which it was impossible at that time to foresee or foretell, and it was therefore his own folly, if he confided in any representations made by the agent of the company. But it is alleged that the agent, by the authority of the directors, represented that the company was entirely solvent and able to pay all losses, and was then worth two million dollars, and that appellant relied on said representations, and was induced thereby to enter into said contracts of insurance; but that, in fact, the company was then insolvent and not able to pay losses, and that it was not worth any considerable amount.

In view of the principle on which the company is organized, it is but reasonable to presume that the alleged representation that the company was then worth two million dollars had reference to the amount of the premium notes

held by the company, on which assessments might be made to pay losses. With this construction, do the allegations constitute a defense to the action? The question is certainly not a very clear one, but the majority of the court are inclined to hold the paragraph good.

The fourth paragraph is clearly bad. If the appellant can impeach the decree of the Marion Circuit Court in this collateral manner for fraud, still the paragraph is bad, because it fails to allege any material facts constituting fraud.

The sixth paragraph is good, for the reasons stated in discussing the second paragraph. Besides, the policies became void on the sale and conveyance of the property by the appellant, unless they had been assigned to the purchaser by the consent of the company; and the appellant would not be liable to be assessed on his premium notes for losses occurring after such sale and conveyance.

The judgment is reversed, with costs, and the cause remanded, with directions to the common pleas to overrule the demurrer to the second, third, and sixth paragraphs of the answer, and for further proceedings.

*A. B. Carlton,* for appellant.

*F. Wilson, A. C. Voris, J. E. McDonald, A. L. Roache,* and *E. M. McDonald,* for appellee.