Clark *et al. v.* The Manufacturers' Mutual Fire Insurance Company.

competent, there was no error in overruling it. *Jones* v. *State*, 118 Ind. 39, and cases cited; *Pape* v. *Wright*, 116 Ind. 502.

Judgment affirmed.

Filed Feb. 16, 1892.

---

No. 16,239.

## CLARK ET AL. *v.* THE MANUFACTURERS' MUTUAL FIRE INSURANCE COMPANY.

INSURANCE.—*Meaning of "Damages" in Section 3753.*—The word " damages," as used in section 3753, R. S. 1881, means fire losses.

SAME.—*Assessments.— When Can be Made.*—Under section 3753 assessments are only authorized for the payment of the just claims of members, founded on policies, and only to pay an excess of the claim over the remainder of the fund on hand after deducting expenses.

SAME.—*Meaning of "Member" in Section 3753.*—The term " member " used in said section 3753 is synonymous with policy-holder, so far as it relates to the payment of fire losses.

SAME.— *Two Classes of Policy-Holders.—Equality of.*—The fire losses of both the paid up policy-holders and those of the purely mutual plan stand on the same footing.

SAME.—*Cancellation.—Right to Make Contract for.*—An insurance company may make a contract for the right to cancel a policy on certain conditions, and providing for the refunding of unearned premiums paid.

SAME.—*Unearned Premiums.—Preference of Paid up Policy-Holders Over Unpaid.*—Paid up policy-holders in a mutual fire insurance company, organized under the laws of this State, for which a receiver has been appointed, and whose policies have been cancelled under an an order of the court, are entitled to have their unearned premiums paid, after the payment of the expenses of the company, out of any money remaining on hand, in preference to the claims of members for fire losses, who must resort to the fund to be created by the payment of premium notes.

MARSHALLING ASSETS.— *Two Funds.— Election.*—A person having two funds to satisfy his demands can not by an election disappoint another person who has only one fund to which he can resort.

From the Marion Superior Court.

*V. Carter, S. J. Peelle* and *W. L. Taylor,* for appellants.

*F. M. Finch* and *J. A. Finch,* for appellee.

McBRIDE, J.—The Manufacturers' Mutual Fire Insurance Company, organized under the laws of this State, was, on the 26th day of April, 1890, by the superior court of Marion county, at the suit of one of its policy-holders, and on a showing and confession of danger of insolvency, placed in the hands of a receiver to close up its affairs with a view to going out of business.

The controversy in this case is between the receiver and certain creditors of the company, who, by their intervening petition, show, in substance, the following facts.

The company, while doing business, issued two forms of policies, one under the purely mutual plan, wherein the assured executed a premium note, which note was liable to be assessed to make assets with which to pay all just claims founded on policies issued by the company. Such policy-holders were, as such members of the company, entitled to share in the profits, if any, in addition to their liability to assessment on their premium notes to pay losses.

The other form of policy is designated in the petition as the "all-cash premium policy," in which the assured paid a fixed and certain premium in cash, and gave no note. Such policy-holders were not members of the company, were not entitled to share in its profits, and were not liable to assessment to pay losses. Both forms of policy contained stipulations reserving to both parties the right to cancel the policy on certain conditions, and providing for the refunding of unearned premiums paid.

It is shown by the petition that, immediately on the appointment of the receiver, he, by order of the court, cancelled all out-standing policies. The claims of the petitioners are all for unearned, return premiums, due on policies thus cancelled, and with one exception the policies were all-cash premium policies.

The petition makes the following showing of the assets and liabilities of the company:

Clark *et al. v.* The Manufacturers' Mutual Fire Insurance Company.

### ASSETS.

Premium notes, assessable under the statute . . . $100,000
Cash received for premiums on all-cash premium
   policies. . . . . . . . . . . . . . . . . . . . 5,000
Cash received from other sources . . . . . . . . 5,000

   Total . . . . . . . . . . . . . . . . . . $110,000

### LIABILITIES.

Fire losses unpaid . . . . . . . . . . . . . . . . $40,000
Amount due on unearned return premiums on all-
   cash policies at date of cancellation . . . . . . 4,000
Amount of the unearned cash portion of premium on
   the mutual policies . . . . . . . . . . . . . . 2,000

   Total liabilities . . . . . . . . . . . . . . . $46,000

The petition shows the amounts of the several claims of the petitioners, that they had made and filed proofs thereof with the receiver, who, it was alleged, admitted and recognized them as indebtedness of the company, but refused to allow or admit them as proper demands to share in any dividend or dividends that might be declared by him on the liabilities of the company.

It is further shown that the receiver has declared and paid a dividend of twenty per cent. upon the claims for fire losses, which was paid out of the cash on hand, including the $5,000 received from premiums on all-cash premium policies, but refused to allow or pay a like dividend on their claims, or to admit and include them in any amount for which an assessment can be made on the premium notes. The petitioners asked for an order directing the receiver:

1st. To apply the sum of $5,000, received from premiums on all-cash premium policies, to the payment of their claims.

2d. If this could not be done, to order him to pay them a dividend of twenty per cent., to make them equal with the claims for fire losses.

3d. That their claims for unearned premiums be allowed

Clark *et al: v.* The Manufacturers' Mutual Fire Insurance Company.

as valid claims, entitled to share in all dividends declared.

4th. That the receiver be directed to admit and include their claims in the amount for which an assessment shall be made on the premium notes.

The petition concluded with a general prayer for relief.

The court sustained a demurrer to the petition, on the ground that it did not state facts sufficient to constitute a cause of action, or to entitle the petitioners to any relief whatever.

The determination of this question requires us to construe sections 3752 and 3753, R. S. 1881, which are as follows:

" 3752. Every person who shall become a member of such company shall, before receiving a policy, deposit his, her, or their promissory note, as a premium note, and shall pay such further consideration, on or before receiving the policy, as may be agreed upon; and such note shall be payable, in whole or in part, when, on any assessment, the directors may require the same. But should any person insuring in such company so desire, he can pay a definite consideration, in lieu of giving a premium note; and in this case, the person so insured shall not be deemed a member, nor entitled to share in the accumulations of the company. And such company may, if it so desire, take a promissory note, for the cash premium, for such length of time, on any policy, as may be agreed upon; and if such premium note shall remain unpaid after it becomes due, the company shall not be held responsible for any loss or damage that may take place under any policy for which such note was given."

" 3753. The funds of every such corporation shall be invested in stocks' or loaned on security, as the directors may order; and shall be appropriated, first, to pay the expenses of the corporation, and then to pay the damages which any member may be entitled to recover on his policy. And if any member shall have a just claim on the corporation, founded on a policy issued by it, exceeding the amount of its then existing funds, exclusive of deposit notes given by the

members, the directors shall forthwith assess such sum as may be necessary to pay the same upon the members, in proportion to the amount of their premiums and deposits, severally, for seven years; but no member shall be liable to pay, in the whole, more than the amount of his premium and deposit note."

It will be observed that the section last above quoted, which relates to the investment and appropriation of the funds of the company, only recognizes, in terms, two objects to which the funds (by which is evidently meant all money received from any source except that realized from assessments on premium notes) may be appropriated. These two objects are: 1st. Payment of expenses; and, 2d. Payment of damages which *members* may be entitled to recover on their policies.

This, as we construe it, means fire losses. Assessments are only authorized for the payment of the just claims of *members*, founded on policies, and only to pay an excess of the claim over the balance of the fund on hand after deducting expenses.

As section 3752 provides that one insuring on the "all-cash premium" plan "shall not be deemed a member, nor entitled to participate in the accumulations of the company," if this provision is to be construed literally, and only those insured on the mutual plan are members, there is no provision whatever made for paying a loss incurred by those who are not insured on the mutual plan. The statute, in terms, recognizes only liability to members.

It can not be supposed, however, that the Legislature, when it authorized the making of contracts of insurance on the all-cash premium plan, did not also intend to provide for the payment of losses arising under such policies.

We are of the opinion that, fairly construed, the term " member," when used in section 3753, in the connection indicated, is synonymous with policy-holder. From this it re-

sults that fire losses on both classes of policies stand on the same footing.

They are equally entitled to payment out of the fund on hand, and premium notes may be assessed, not only to pay losses suffered by those insured on. the purely mutual plan, but for 'the payment of losses suffered by members who have paid their premiums in full in advance. *Jackson* v. *Roberts*, 31 N. Y. 304.

Assessments on premium notes can, however, only be made to pay fire losses. *Sinnissippi Ins. Co.* v. *Taft*, 26 Ind. 240. In the case cited it is held that the premium note is " sacred to the purpose of indemnity of members against losses by fire," and can not be used for any other purpose. See, also, *Boland* v. *Whitman*, 33 Ind. 64.

This disposes of the claim of the petitioners to share in *all* dividends declared, or in the proceeds of any assessments on premium notes.

Construing section 3753 again, literally, we find no provision whatever made for the payment of claims of the character here involved.

Unearned premiums are neither losses nor expenses. The cancellation of the policies was, however, in accordance with the terms of the contract, and the contract was one the parties might lawfully make. *Boland* v. *Whitman, supra.* The claims of the petitioners for unearned return premiums are therefore just and valid claims against the company. The only fund out of which they can be paid is the $10,000 cash on hand. The primary claim upon this fund is that for expenses; but, accepting the showing made as full, there are no expenses unpaid. After the payment of expenses, this fund may be applied to the payment of fire losses. The members to whom fire losses are due have therefore two funds to which they can resort, while the holders of claims for unearned return premiums have but one. It thus becomes a question of the marshalling of assets. We have here two classes of

creditors and two funds. One class of creditors (claimants of fire losses) have access to both funds, while the other class (the petitioners herein) are confined to one, and in that one fund the first class has the superior right.

We think the case is clearly within the equitable principle upon which the rule for the marshalling of assets depends, that a person having two funds to satisfy his demands, shall not by his election disappoint a party who has only one fund. *Aldrich* v. *Cooper*, 8 Vesey, 308; 2 Leading Cases in Eq. 228, and notes to same; *Hannegan* v. *Hannah*, 7 Blackf. 353.

We think it is not within the case of *In re Professional Life Assurance Co.*, 3 L. R. Eq. 668, as we think here the premium notes in themselves constitute a fund, which was created for that express purpose, so that when the conflicting rights of the two classes of creditors arose the two funds were in existence. In our opinion the petitioners have the right to insist that the fund created by the premium notes be first exhausted in payment of fire losses, and that the cash fund on hand be not drawn upon for that purpose for enough to so impair it that it will be insufficient to pay the claims of petitioners, unless the other fund prove insufficient to pay the fire losses. It follows that the receiver erred in declaring and paying the dividend already paid from the cash on hand. He should be directed by the court to assess upon the premium notes and collect such sum as will, with the surplus of cash fund over and above the expenses and unearned return premiums, suffice to pay fire losses. Only in the event that the premium note fund proves insufficient to pay fire losses should the cash fund be drawn upon for that purpose far enough to defeat the claims of the petitioners. If the dividend already declared and paid has that effect, the petitioners are entitled to be subrogated to the rights of the other class of creditors, in the other fund, for enough to make them whole.

The petitioners are not entitled to relief in any of the spe-

cific forms indicated in the prayer to their petition, but under the general prayer for relief with which the petition closes, the court is empowered to extend any relief justified by the facts pleaded.

Judgment reversed, with instructions to the superior court of Marion county to overrule the demurrer to the petition, and for further action in accordance with this opinion.

Filed Feb. 16, 1892.