ALFRED CARR, Superintendent, Respondent, v. UNION MUTUAL FIRE INSURANCE COMPANY *et al.*, Appellants.

St. Louis Court of Appeals, December 18, 1888.

1. **Insurance:** DISSOLVED COMPANY: DISTRIBUTION OF FUNDS. When a mutual fire insurance company is dissolved, the claimants of unearned premiums and of the surrender values of policies stand on an equal footing with general creditors whose claims have been duly allowed; and a judicial order directing the payment of all the balance remaining on hand to a creditor whose allowed claim is larger than such balance is erroneous and contrary to the statute, when there are unearned premiums and surrender values remaining due and unpaid.

2. **Insurance:** MUTUAL COMPANY: CASH PREMIUMS: SURRENDER VALUES. It is error to assume that surrender values or claims for unearned premiums, in the case of a mutual insurance company, either do not exist at all, or attach only to policy-holders who have given premium notes. Those rights belong, as in other cases, to policy-holders in such a company who have paid their entire premiums in cash.

*Appeal from the St. Louis City Circuit Court.*—HON. GEORGE W. LUBKE, Judge.

REVERSED AND REMANDED.

*Henry W. Bond,* for the appellants.

The court erred in refusing to allow an assessment for the payment of indebtedness of the dissolved company for "unearned premiums and surrender values of its policil." R. S. sec. 6047. The unearned premiums and surrender values of the dissolved company are entitled to share in any assessment made for the payment of the debts and claims allowed against such company, in proportion to their respective amounts. R. S. sec. 6047, sub-sec. 4; 44 Mo. 283.

*Reynolds & Relfe,* for the respondent.

All policy-holders in a mutual company are members of the association, whether the premiums on their policies have been paid wholly in cash, or partly in cash and partly by note. *State ex rel. v. Ins. Co.*, 91 Mo. 311. The relations of members of mutual companies are in many respects analogous to those of stockholders in stock companies. *Mygatt v. Ins. Co.*, 21 N. Y. 52. Debts due by the company must be paid off before anything can be returned to the stockholders of a stock company. May on Ins. sec. 548. Strictly speaking, a mutual policy has no surrender value or no unearned premium, such as pertains to stock companies. In the

theory of the law, the mutual company has no capital; its notes represent its assets, and are available to pay losses and expenses already incurred. R. S. sec. 6001. The powers of the directors are limited, by this section, to assessments for losses adjusted and unpaid, losses claimed but unadjusted, and the amount of expenses accrued. May on Ins. secs. 557 and 567; *Ibid.* chap. 25. A court or receiver, in the case of insolvency, derives no additional powers and can maintain no suits or make no assessments on the notes, other than the company if going could have done. As the company itself could have levied no assessment on the notes to pay "return premiums" or surrender values, the court cannot do so on the dissolution of the company. Hence, the classification of unearned premiums and surrender values in section 6047 of our statute does not apply to mutual companies. No assessment has ever been levied for these claims, and no allowance has ever been made of them. The construction placed on section 6047 by the trial court is correct.

THOMPSON, J., delivered the opinion of the court.

In the winding up of a dissolved mutual fire insurance company under the statutes of this state, there was, after paying the fire losses and expenses of the administration, a small fund for distribution. Upon the petition of Mr. Hensler, who was the holder of a note of the company for a larger amount than thus remained for distribution, upon which note a bank had advanced money to the company which had been used by it in discharging fire losses, the court ordered that the remnant of the fund which was subject to distribution be paid over to him. To this order a large number of policy-holders, who had paid the premiums for their policies entirely in cash, excepted, and they have appealed to this court.

The statute which prescribes the priorities which

shall take place in distributing the assets of dissolved insurance companies, so far as it applies to this case, reads as follows: "Unless, under the provisions of this chapter, re-insurance of a dissolved company is effected and its assets conveyed to the re-insuring company, the superintendent of the insurance department, under the direction of said court, shall apply the sums realized from the assets of such dissolved company: * * * fourthly, to the payment of the debts and claims allowed against such company, and the unearned premiums and the surrender values of its policies, in proportion to their respective amounts." R. S. sec. 6047.

The court, notwithstanding this statutory provision, ordered that the fund remaining for distribution be paid over to Mr. Hensler, a general creditor, to the exclusion of the claims of members for unearned premiums or the surrender value of their policies. The learned counsel for the respondent upholds this ruling of the circuit court upon the theory that such policy-holders of mutual insurance companies as have paid all cash for their policies, without giving premium notes, are equally *members* with those who have paid part cash and given premium notes for the balance; that it could not have been the purpose of the statute, in the distribution of the company's assets, where there is not enough for all, to place the members of the company upon an equality with its general creditors; and, finally, that in a mutual insurance company a policy, although it may have been paid entirely in cash, has no surrender value. We do not concur in these views. That a policy-holder in a mutual insurance company who has paid all cash for his policy is none the less a member of the company, is not to be questioned, since the decision of the supreme court in the case of *State ex rel. v. Manufacturers' Ins. Co.*, 91 Mo. 311. Nor do we question the general proposition that, according to the principles upon which courts of equity proceed in winding up

insolvent corporations and partnerships and distributing their assets, the general creditors are to be preferred before the members. But it is none the less true that it is competent for the legislature, if it sees fit to do so, to make a different rule of distribution, by placing the members, or certain members, upon an equality with general creditors. And the legislature has done so in explicit terms in the statute above quoted.

Nor can it be successfully argued, as is argued by the learned counsel for the respondent, that this statute has no application to mutual companies. It is in the article of the chapter of our Revised Statutes relating to insurance, which relates to insurance companies in general, the article being entitled "general provisions." The portion of that article which treats of the winding up of insolvent insurance companies commences with section 6037, and that section in express terms includes mutual insurance companies, making the fact that the premium notes of such companies are below the amount required the ground of instituting proceedings to wind them up. The succeeding sections down to section 6047, from which the above quotation is made, relate entirely to the manner of winding up insurance companies of all kinds ; and there is no ground whatever for excluding from the operation of this section mutual companies, especially as it does not appear that any statutory provision exists prescribing the manner in which the assets of dissolved mutual insurance companies shall be distributed.

The view put forward on behalf of the respondent, that a mutual insurance policy has no surrender value, is disposed of by the terms of the policies of insurance issued by this company, which expressly recognize that its policies have a surrender value, and that, on their cancellation at the request of the assured or upon notice given by the company, the company "shall refund any premium that may have been paid, reserving the usual

short rates," etc. The contracts themselves thus recognize the existence of a surrender value, and we do not understand upon what principle the existence of a surrender value should be denied. It seems that a recognition of such a quality in a policy which has been paid for entirely in cash is necessary to place such policy-holder upon an equality with the other policy-holders who have paid only part in cash and given their notes for the balance. If, by the dissolution of the company pending the term of insurance represented by the policy which has been thus paid for in cash, the company becomes disabled from complying with its contract, no good reason is perceived why the holder of such a policy should not be regarded as having overpaid his policy, and should not be entitled to be reimbursed for such over-payment out of any assets which may remain in the hands of the superintendent of insurance after paying fire losses and other preferred claims and the costs of administration.

It is further argued in behalf of the respondent that no assessment has been ordered by the court in terms for the purpose of raising a fund for the payment of unearned premiums, and such is the fact as disclosed by the record.

But we do not see how this fact affects the question to be decided here. The question to be decided here is not whether the court ought to make such an assessment, but whether the remnant of a fund, which is left after satisfying the purposes for which another assessment has been made, should be distributed in accordance with the statute, or upon a conception of equity opposed to the language of the statute. The whole question comes back to this : The statute makes the rule of distribution, and if the legislature had even preferred the claims of policy-holders for unearned premiums to the claims of general creditors, instead of merely putting them on one equality, we cannot see

where the judicial courts would acquire the power to set aside the statute, unless it impaired the obligation of contracts then existing.

The judgment will be reversed and the cause remanded. All the judges concur.